JENNA C. BAILEY, OSB No. 196215
JBailey@BaileyLawFirmAz.com
**BAILEY LAW FIRM, PLLC**
2169 East Warner Road, Suite 104
Tempe, Arizona 85284
(480) 681-5408 Phone
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| Bill Gaede, | Case No.: 3:22-cv-00380 |
| Plaintiff, | |
| v. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT, FALSE DESCRIPTIONS, UNFAIR COMPETITION** |
| Michael Shilo DeLay; Anastasia Bendebury; and Biospintronics, LLC | |
| Defendants. | |

Plaintiff Bill Gaede, for his Complaint against Michael Shilo DeLay, Anastasia Bendebury, and Biospintronics LLC, states and alleges as follows:

### NATURE OF THIS ACTION

1.    This is an action for copyright infringement and unfair competition under the laws of the United States (the Lanham Act, codified at 15 U.S.C. § 1125, *et seq*., the Copyright Act, codified at 17 U.S.C. § 501, *et seq*.), and the common law of copyright infringement and unfair competition through false representation.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has personal jurisdiction over Defendants because: (a) Defendants have substantial contacts in the State of Oregon related to the claims in this action; and (b) Defendants engaged in the wrongful acts alleged herein in the State of Oregon.

4.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c).

## PARTIES

5.      Plaintiff Bill Gaede ("Plaintiff") is the author of an alternative theory to mainstream physics known as the Rope Hypothesis embodied in a 514-page book titled *Why God Doesn't Exist* ("WGDE") (https://www.bookwire.com/book/USA/why-god-doesn-t-exist-9780970496041-7197948).

6.      Plaintiff owns the site www.ropehypothesis.com where his theory is showcased.

7.      Plaintiff started a personal YouTube channel in October of 2006 https://www.youtube.com/user/bgaede and another YouTube channel since January of 2018 https://www.youtube.com/c/RationalScience where he popularizes the Rope Hypothesis through biweekly lectures.

8.      The Rope Hypothesis and the foundations that underlie it have been published in several articles, books, interviews and conferences dating back to 2003.

9.      Defendants Anastasia Bendebury (a.k.a. Nastia, Quinn Garrow) and Michael Shilo DeLay (a.k.a. Shilo, Micky Callahan) own and operate an informal Internet scientific content site known as Demystifying Science ("DS") (https://demystifyingscience.com/).

10.     The domain was registered on October 14, 2019, with Defendants' access software provider Squarespace Inc.

11.     Defendants Bendebury and DeLay own Defendant Biospintronics LLC, which they registered in April of 2021.

12.     The known business activities DS engages in include:

    a)     publishing scientific articles in popular magazines;

    b)     educating the public through articles and blogs;

    c)     podcasts;

    d)     YouTube videos - https://www.youtube.com/c/DemystifyingScience; and

    e)     selling of merchandise such as T-shirts.

## THE COPYRIGHTS

13.     Why God Doesn't Exist (WGDE), authored by Plaintiff, was registered at the United States Copyright Office of the Library of Congress, TXu000886847/199-01-04.

14.     The Rope Hypothesis and Rope Model theory originated in WGDE.

## FACTUAL ALLEGATIONS

15.     From 2018 to 2019, Defendants Bendebury and DeLay formally referenced Plaintiff's intellectual material in articles where they explained the physical mechanisms that underlie light, gravity, electromagnetism, and the workings of the atom. [*See the references at the end of each article published at The Art of Rational Science* (https://issuu.com/artofrationalscience)].

16.     On October 14, 2019, Defendants Bendebury and DeLay registered their Demystifying Science website with Squarespace Inc.

17.     For more than a year, Defendants Bendebury and DeLay published articles in various popular scientific magazines and directed readers to their DS website.

18.     Defendants Bendebury and DeLay plagiarized material from Plaintiff Gaede in their YouTube videos that resulted in over 5,000 hits.

19.     Defendants Bendebury and DeLay's Facebook page on DS also grew to over 5,000 members.

20.     During this time, Defendants Bendebury and DeLay requested donations from their supporters via Facebook and in each article on their website (https://demystifyingscience.com/) and profited from plagiarized materials that belonged to Plaintiff.

21.     On April 7, 2021, Plaintiff discovered the plagiarizing activities of both Defendants Bendebury and DeLay due to a thread posted on a Facebook group.

22.     On April 13, 2021, Plaintiff served Defendants Bendebury and DeLay with a formal cease-and-desist letter requesting removal of the plagiarized material.

23.     On April 16, 2020, Defendants Bendebury and DeLay referenced their fledgling site in an article they published in Business Insider https://www.businessinsider.com/how-couple-furloughed-turned-science-website-into-viable-business-2020-4.

24.     In the article, Defendants Bendebury and DeLay claimed to have received 17,000 visitors in the first month alone.

25.     Defendants Bendebury and DeLay replied by conceding via e-mail and through comments in a Facebook group that the intellectual property belongs to Plaintiff and immediately blocked Plaintiff on Facebook, presumably to prevent him from downloading comments made in past threads that could serve as evidence in future litigation.

26.     A few days later, realizing that Plaintiff had already downloaded the relevant comments, Defendants Bendebury and DeLay unblocked Plaintiff and asked for instructions on how to provide attribution to him.

27.     Realizing that Plaintiff demanded the unconditional removal of the plagiarized intellectual property, Defendants Bendebury and DeLay changed tactics.

28.     Despite vaguely attributing credit to Plaintiff in a couple of their DS articles, Defendants Bendebury and DeLay argued to Plaintiff that the material was in fact theirs and that even if it was not, they had a right to it without providing attribution.

29.     In mid-April 2021, rather than remove the plagiarized material, Defendants Bendebury and DeLay began editing their blogs and articles, replacing key words in patently copyrighted definitions with synonyms in hopes of avoiding legal action.

COMPLAINT

30.    On April 15, 2021, Defendants Bendebury and DeLay created a YouTube channel called "Demystifying Atomics" and moved videos containing plagiarized intellectual property to it, presumably to avoid compromising their main DS channel.

31.    On April 22, 2021, Defendants Bendebury and DeLay registered a limited liability company named "Biospintronics LLC" with a post office box as an address, presumably to avoid compromising their personal assets.

32.    Defendants Bendebury and DeLay had by then palmed off the intellectual property for over a year before they registered their company.

33.    On May 6, 2021, Plaintiff sent a cease-and-desist letter to Squarespace Inc., the internet provider of the content site Demystifying Science, and to YouTube, where DS has a channel of the same name.

34.    On May 7, 2021, Squarespace notified Plaintiff that the copyrighted material was removed.

35.    On May 10, 2021, Squarespace notified Plaintiff that, since Defendants Bendebury and DeLay contested the claim, the material would be restored unless Plaintiff served them with a court order within 10 days.

36.    On May 19, 2021, YouTube notified Plaintiff that the plagiarized videos were removed.

37.    Shortly after, either YouTube or Defendants Bendebury and DeLay deleted the secondary Demystifying Atomics channel.

38.    On May 30, 2021, YouTube notified Plaintiff that, since Defendants contested the claim, the material would be restored unless Plaintiff served them with a court order within 10 days.

39.    By June of 2021, both Squarespace and YouTube restored DS articles and videos.

40.    Defendants Bendebury and DeLay then made the videos private.

41.    In order to preserve the videos as evidence, Plaintiff uploaded them to his channel:

**Shape of a Photon?**

https://www.youtube.com/watch?v=rSFaY1X6Fg4 (DS made private)

https://www.youtube.com/watch?v=IjwfO-cQ530 (Uploaded for the Court)

**Electricity Begins with Atoms**

https://www.youtube.com/watch?v=pi-kEpbxOlc (DS made private)

https://www.youtube.com/watch?v=7PuyCijXQgA (Uploaded for the Court)

**What's Inside a Magnetic Field?**

https://www.youtube.com/watch?v=AU1ejXvWF0g (DS made private)

https://www.youtube.com/watch?v=6msF1yLmBJM (Uploaded for the Court)

## INFRINGING ACTIVITIES

42.    Defendants Bendebury and DeLay copied the strategic definitions from WGDE that form the Foundations of Physics and provide physical interpretations to phenomena that were published on the DS site.

43.    The terms plagiarized include, but are not limited to the following: *object, distance, location, motion, exist, concept.*

WGDE: p. 13. ***object***: that which has shape
DS: "**Object**… something with a shape (modified in April 2021 to
read: "*An object is a thing with a surface…*")
WGDE p. 15. ***distance***: the gap or separation that exists between two objects. ***location***: the set of distances of the object with respect to the remaining matter in the Universe. WGDE p. 460. ***exist***: physical presence. The physical component invokes an object. The presence part requires a location.
DS: "in order for that object to exist it has to also have ***location***: *a set of static **distances*** to all the other objects in the scene. Without a **location** an object cannot be said to **exist**" (Replaced on April 11 by: "*in order for that object to exist it has to also have physical place: a set of static distances to all the other objects in the scene.*") "reserve the word '**exist**' for physical objects with definite **locations**"
"an **existing** object is a body with a **location**; that is something with a shape"
WGDE: p. 15. ***motion***: two or more locations of an object.
DS: Without two or more locations, no **travel** is possible in physics.
WGDE: p. 13: In Physics… we must define the crucial word *object* in such a restrictive way as to exclude abstract **concepts**. All words in the dictionary are either objects or **concepts**. WGDE p. 16. ***concept***: A word that embodies or invokes more than one object or location. WGDE p. 15. A **concept** is a relation between TWO objects.
DS: "All words, and hence all ideas… can be divided into one of two categories: object and **concept**." (DS changed this on April 11 to read: "*All words, and hence all **ideas**… can be divided into one of two categories: objects and **ideas**.*") A **concept**… is merely the relationship between one existing object and another or an additional concept. (DS replaced the word ***concept*** in this sentence on April 11 with: "*Ideas abstractly link one existing object and another or an additional concept*")

44.    Mainstream physics simulates every phenomenon with either discrete particles or transverse waves.

45.    In mainstream physics, all atoms are not physically interconnected. This is the seminal and novel hypothesis of WGDE.

46.    WGDE discusses for the very first time that only if every atom is physically bound to all others can we explain action at a distance why 'gravity goes through things.'

47.    In WGDE, all atoms are interconnected by a twined rope-like entity and light is a 3D torsion along this matter. *See Attachment A* that shows a side-by-side comparison of the physical interpretations of mathematical physics and the Rope Model of *light* and *gravity*. It shows that there is no commonality in the architectures and mechanisms proposed for light, gravity, electromagnetism, and the atom between mainstream theories (primarily General Relativity and Quantum Mechanics) and the Rope Hypothesis.

48.    Defendants Bendebury and DeLay realized the importance of this seminal discovery to provide alternative physical interpretations to mainstream physics and incorporated it in 'their' physical interpretations of light and gravity.

49.    Pursuant to Defendants Bendebury and DeLay's own testimony in the Business Insider article they published:

> "…rendering visualizations of **light**, **gravity**, and **electromagnetism**… people loved our scientific explanations — 17,000 people came to read about them in the first month and we received hundreds of likes and shares on social media… in the first two weeks, we're on track to cover our rent…

Editorial comment: *They're* [Defendants Bendebury and DeLay] *the creators of Demystifying Science, a science literacy organization devoted to providing clear, **mechanistic** explanations for natural phenomena.*"

50. Defendants interconnect their atoms with a pair of twined threads: a DNA-like rope (as proposed by WGDE) that mediates **light**. They describe electromagnetic waves exactly as in the previously published works of Plaintiff, WGDE: torsions propagating along this coiled, doubly stranded medium.

**Demystifying Science (Defendants)**



///

**The *Rope Hypothesis* (Plaintiff)**



51.    In 1911, Niels Bohr proposed that atoms do what today is known as Quantum Jump: the electron bead jumps back and forth between energy levels that encapsulate the proton bowling ball.

52.    Under the Rope Hypothesis and Rope Model discussed in WGDE, there is no bead and there is no bowling ball. The electron is a balloon: a physical membrane that encapsulates the proton STAR. The electron membrane and the urchin-like proton are made of the same threads that constitute the electromagnetic (EM) rope.

53.    Under the Rope Hypothesis and Rope Model, quantum jumping works as follows: the electron balloon expands and contracts, and by doing so it torques the EM rope and the torsion propagates bidirectionally to the atoms located at opposite ends.

54.    Defendants Bendebury and DeLay appropriated this concept from Plaintiff's book WGDE and changed the language in their blogs and videos.

55.    WGDE calls the expansion and contraction of the electron shell: *pumping*.

56.    Defendants Bendebury and DeLay describe the same expansion and contraction as *breathing*.

57.    The Rope Hypothesis and Rope Model refers to the mediators as *rope* and *thread*.

58.    DS named the same features: *tails*, *filaments*, and *wires*, and copied what the Rope Hypothesis and Rope Model proposes: that torsions along these physical mediators constitutes light.

59.    A dynamic, side by side comparison of the quantum jumping mechanism that Defendants Bendebury and DeLay plagiarized can be seen at the following link: https://www.youtube.com/watch?v=niBpTAdJ2E4.

60.    Under mathematical physics, **electricity** consists of a flow of electron beads from one end of the wire (negative pole) to the other (positive pole).

61.    In contrast, the Rope Hypothesis and Rope Model proposes that a live wire consists of long strings of countless merged electron shells of atoms. Electricity (current) consists of clockwise and counter-clockwise rotating strings comprised of these blended membranes. There is no flow of electron beads. The entire row of fused electron balloons spins *in situ*.

62.    Defendants Bendebury and DeLay copied the model mentioned in WGDE and attributed it to themselves.

63.    Specifically, Defendants Bendebury and DeLay propose that electricity consists of a string of merged electron shells that are spinning in situ: "We build on an

COMPLAINT

idea first proposed by Bill Gaede in the mid-2000s: Electricity as surface-to-surface rotational gearing between electron-shells on atoms."

64.    This comment was placed in the DS article on or about April 15, 2021, after Defendants Bendebury and DeLay were served with a cease-and-desist letter.

65.    A side-by-side comparison of electricity between DS and the Rope Hypothesis can be watched at the following videos:

Merged e-shells https://www.youtube.com/watch?v=PSRC28dQtrQ

Electric Circuit https://www.youtube.com/watch?v=_RQn-r0jLLE

66.    Mainstream mathematics currently has no explanation for how a magnet attracts another from a distance.

67.    Nobel laureate Richard Feynman testifies in this regard here: https://www.youtube.com/watch?v=Pq9wDVFaJYo.

68.    Outside of mainstream mathematics, the Rope Hypothesis and Rope Model illustrates magnetic attraction and repulsion so that anyone can understand these mechanisms. When the electron shells rotate *in situ*, they swing around themselves the threads that make up the electron shells and the EM ropes that comprise the EM ropes that interconnect them. A magnetic 'field' is a region where countless threads that make up the electron shells and the EM ropes that interconnect the atoms swing through at high speeds. Two parallel live wires are exactly like two magnets: they attract if current travels in the same direction and repel if current travels through them in opposite directions (Ampere, 1820).

69.     Under the Rope Hypothesis and Rope Model, if current flows in the same direction on the two wires, the gazillions of electron shells spin in the same direction and swing countless threads in the same direction. While the threads of one wire come down, those of the other come up. They interact like two gears turning in the same direction and the wires attract each other. If we turn one of the wires around, now the threads clash against each other: repulsion.

**TRH Attraction (current in the same direction). Pattern left by iron filings. As threads on the left come down at 2, they interact sprinkled over two wires with the threads on wire 2 coming up. Friction carrying current in between countless threads pulls the wires together. Same direction.**



**TRH Repulsion (current in opposite directions). Pattern left by iron filings. Threads swinging around the wires travel in opposite directions sprinkled over two wires and clash against each other. As a result, carrying current in the wires push each other away. Opposite directions.**



70.    Defendants Bendebury and DeLay realized the importance of these discoveries and gave credit to WGDE and Gaede in their 2018/19 papers https://issuu.com/artofrationalscience, but failed to attribute it as their source after they created their professional website:

> Current flow is merely reimagined as propagation of in situ e-shell surface rotation. This perspective, that electromagnetic phenomena are the result of physical objects rather than mathematical equations, is rooted in the conceptual framework of rational science, as championed by Bill Gaede…

The above comment was introduced on or about April 15, 2021, in the DS magnetism article after Plaintiff served Defendants Bendebury and DeLay with a cease-and-desist letter.

71.    A side-by-side comparison of the mechanisms of electricity and magnetism DS v. the Rope Hypothesis and Rope Model is provided in the following videos:

> DS vs TRH magnetic attraction
>
> https://www.youtube.com/watch?v=wRC5OFleG2M
>
> DS vs TRH magnetic repulsion
>
> https://www.youtube.com/watch?v=vqum76cjAKI

72.    Defendants Bendebury and DeLay plagiarized the mechanism of gravity of the Rope Hypothesis and Rope Model which proposes that all atoms are physically interconnected. It is the EM rope that binds any two atoms which serves as this physical mediator. Without this elongated entity, action at a distance cannot be visualized.

73.    Under the Rope Hypothesis and Rope Model, as an object approaches another, the elongated mediators that bind any two atoms fan out. It is this fanning out that explains gravitational acceleration of one object towards another.

*Action-at-a-distance*



**short distance,
EM ropes fan out**

**longer distance,
EM ropes come together**

**enormous distance,
EM ropes act as one**

DS: "all of your atoms are gravitationally entwined with all of the atoms around them…atoms behave as if they are pulling on one another. One way to visualize mass is to imagine atoms connected by an imaginary tensile structure… web of tensioned connectivity… visualize the word mass as meaning outward pull from one object upon the next in a network of interconnected bodies"

74.    Defendants Bendebury and DeLay went as far as to copy the images of the Rope Hypothesis and Rope Model related to mass and gravity and made cosmetic modifications to claim them as theirs:

**DS mass/gravity: physical interconnectivity TRH physical interconnectivity: why the Moon doesn't leave the Solar System**

 



### PLAINTIFF'S FIRST CLAIM

### (Copyright Infringement)

75.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76.    Copyright infringement requires Plaintiff to prove: ownership of the copyright; that Defendants had access to the copyrighted work; and that there exists 'substantial similarity' between Defendants' and the copyrighted works. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d* (1977).

77.    Plaintiff holds a registered copyright for the work WGDE.

78.    Plaintiff is also the owner of all right, title, and interest in, and to all other copyrightable elements of, WGDE: the Rope Hypothesis and Rope Models, including the concepts, pictures, and texts, and their compilation and arrangement to explain unique

COMPLAINT

descriptions of atomic and subatomic entities such as the atom, the electron, and light itself as well as the explanations of how these mediators work during phenomena such as magnetism, electricity, and gravity.

79.    Defendants Bendebury and DeLay had access to the copyrighted work WGDE and its derivative works as discussed at www.ropehypothesis.com and YouTube sites.

80.    Defendants Bendebury and DeLay copied and/or created derivative works from WGDE in their DS website and in YouTube videos that they made private after their plagiarism was discovered.

81.    Content on the DS website, Defendants' YouTube channel, and Facebook page relating to unique descriptions of atomic and subatomic entities such as the atom, the electron, and light itself as well as the explanations of how these mediators work during phenomena such as magnetism, electricity, and gravity, and/or portions thereof, are substantially similar to Plaintiff's copyrighted material and their derivative works and/or portions thereof.

82.    Defendants Bendebury and DeLay infringed Plaintiff's copyrighted work in violation of 17 U.S.C. § 501 by reproducing, distributing, creating derivative works based upon, and publicly displaying works that were copied or caused to be copied from WGDE and www.ropehypothesis.com and Plaintiff's YouTube channels that are substantially similar to that copyrighted work.

83.    Defendants Bendebury and DeLay have acted, and are acting, without the permission, license, consent, or authorization of Plaintiff.

84.     Defendants Bendebury and DeLay's acts of copyright infringement have caused and are causing great and irreparable harm to Plaintiff, Plaintiff's goodwill, and Plaintiff's rights in and to the WGDE copyright, in an amount which cannot be adequately determined at this time, and unless restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

85.     On information and belief, Defendants Bendebury and DeLay's acts of copyright infringement have been and are being committed with actual knowledge of Plaintiff's prior rights in WDGE and its derivative works, and the infringement is willful and in gross disregard of Plaintiff's rights.

86.     By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants and anyone associated therewith, to restrain further acts of copyright infringement, and to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of copyright infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Defendants.

## PLAINTIFF'S SECOND CLAIM

### (False Designations of origin, False Descriptions, and Unfair Competition)

87.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     Defendants utilized Plaintiff's copyrighted work by reproducing, distributing, creating derivative works based upon, and publicly displaying works that were copied or caused to be copied from WGDE and its derivative works mentioned in this Complaint without any attribution to Plaintiff or Plaintiff's works.

89.     Defendants recruited followers with articles and videos that contain Plaintiff's copyrighted material with a percentage of followers becoming donors.

90.     Derivative works from the copyrighted material has produced, and continues to produce, an income for Defendants.

91.     The copyrighted material has not been and is not being utilized solely for educational purposes.

92.     Defendants are direct competitors of Plaintiff in the science information market, on the world wide web, YouTube, and social media platforms.

93.     Defendants' use of false descriptions and acts of unfair competition have caused and are causing great and irreparable harm to Plaintiff, his reputation, goodwill, and his rights in and to profit from his copyrighted works and derivative works, in an amount which cannot be adequately determined at this time, and unless restrained, Defendants will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

94.     Defendants have rewritten portions of their website pages and placed dubious notes in which they belatedly and vaguely credited Plaintiff for unspecified contributions.

95.     Defendants deliberately changed the language they took for the foundations for physics in WGDE and its derivative works to mislead and confuse readers, followers, visitors on the internet, blogs, social media, and in print articles regarding the identity of the original source of these works.

96.    Defendants knowingly and willfully employed synonymous language to deceive readers, followers, and visitors of the various virtual and print forums into thinking that the mechanisms, connections, and entities originated with Defendants. 15 U.S.C. § 1125(a)(1)(A).

97.    By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, and anyone associated therewith, to restrain further acts of infringement or unfair competition, and to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of infringement and unfair competition, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of the same.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief:

A.    A permanent injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns, and all those in concert or participation with any of them, from:

1.    imitating, copying, using, reproducing, transmitting, and/or displaying works unique to Plaintiff's copyrighted materials and derivative works thereof or other materials that imitate or are confusingly similar to unique descriptions, pictures, diagrams, videos, and explanations;

2.    using any other false representation or description or any other thing calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to Plaintiff's protectable copyright; and

3.    copying, distributing, publicly displaying, or creating derivative works based upon the WGDE and any derivative works including videos, blogs, articles, or any other copyrightable element of Plaintiff's work.

B.    An order directing Defendants to remove from the Demystifying Science website, YouTube, social media, and other known and unknown digital and written media, any and all materials that infringe Plaintiff's copyrights, specifically in the articles and videos listed below:

1.    https://demystifyingscience.com/blog/2020/3/12/exist-vs-occur

2.    https://demystifyingscience.com/blog/photon

3.    https://demystifyingscience.com/blog/2020/2/21/why-is-light-speed-limited

4.    https://demystifyingscience.com/blog/how-to-visualize-electricity

5.    https://demystifyingscience.com/blog/magnetism

6.    https://demystifyingscience.com/blog/2020/2/25/what-causes-inertia

7.    https://demystifyingscience.com/blog/2020/3/6/where-does-mass-come-from

8.    https://www.youtube.com/watch?v=rSFaY1X6Fg4 (DS made private)

9.    https://www.youtube.com/watch?v=pi-kEpbxOlc (DS made private)

10.    https://www.youtube.com/watch?v=AU1ejXvWF0g (DS made private)

C.    An award of Plaintiff's actual damages, and treble damages based upon an accounting of Defendants' profits, including all statutory damages and enhancements, other enhancements, and attorneys' fees on account of the willful nature of Defendants' acts as provided in and pursuant to 17 U.S.C. § 504;

COMPLAINT

D.      An order directing Defendants to undertake corrective action in a form and manner that is acceptable to Plaintiff and the Court; and

E.      Such other relief, in law or in equity, to which Plaintiff may be entitled, or which this Court may deem just and proper.

Dated this 9th day of March 2022.

**BAILEY LAW FIRM, PLLC**

/s/ Jenna C. Bailey
Jenna C. Bailey (OSB No. 196215)
jbailey@baileylawfirmaz.com
Attorney for Plaintiff

COMPLAINT