UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BILL GAEDE, and NILA GAEDE,
husband and wife,

        Plaintiffs,

v.

MICHAEL DELAY; ANASTASIA BENDEBURY;
and BIOSPINTRONICS, LLC,

        Defendants.

Case No. 3:22-cv-00380-YY

OPINION AND ORDER

YOU, Magistrate Judge.

This case involves a copyright dispute over a book about an alternative theory to mainstream physics. Plaintiffs allege that defendants have wrongfully copied ideas from plaintiffs' copyrighted book and used them as their own. The individual defendants, Michael DeLay and Anastasia Bendebury, have moved to dismiss plaintiffs' complaint on several grounds, including lack of standing, lack of subject matter jurisdiction, and failure to state a claim. ECF 22, 23. The business entity that the individual defendants control, defendant

1 – OPINION AND ORDER

Biospintronics LLC, has also moved to dismiss the claims against it for the all the reasons stated in the individual defendants' motion to dismiss. ECF 36.[1]

As explained more fully below, plaintiffs have failed to sufficiently allege that defendants' works infringe plaintiffs' copyrighted work. For one, plaintiffs have not alleged that many of the images, diagrams, and other materials plaintiffs claim were infringed are part of the copyrighted work. Also, the portions of the copyrighted work that plaintiffs allege defendants copied are not protected by plaintiffs' copyright; plaintiffs allege the right to control the underlying ideas, which are not protected by copyright, and not the original expression of those ideas embodied in plaintiffs' copyrighted work. Thus, plaintiffs' copyright infringement claims are dismissed. Similarly, plaintiffs' unfair competition claims under the Lanham Act are also dismissed because they are simply copyright infringement claims mislabeled as trademark infringement claims, and the Lanham Act does not provide a cause of action for unattributed copying.

## I. Legal Standard

Before reaching the merits of the parties' arguments, it is necessary to identify the correct legal standard applicable to defendants' motions to dismiss. Defendants have moved to dismiss under both Federal Rule of Civil Procedure 12(b)(1) for lack of standing and by necessary extension, lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim. Mot. Dismiss 10, 20, ECF 22.

---

[1] Defendants Michael DeLay and Anastasia Bendebury are each proceeding pro se, and though they filed separate motions and replies, the documents are identical in all material aspects. And given that Biospintronics has essentially joined the individual defendants' motions to dismiss, any citation to a motion to dismiss in this Opinion and Order will refer only to defendant DeLay's motion to dismiss, ECF 22, unless otherwise noted. Any reference to "defendants" collectively refers to DeLay, Bendebury, and Biospintronics.

Defendants' argument regarding standing conflates statutory standing with constitutional standing; only the latter is relevant to the "injury in fact" analysis that is part of the court's Article III standing requirement or subject matter jurisdiction. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015) ("The issue is whether Minden has a statutory right to sue for infringement under the Copyright Act, which is properly addressed in a motion under Rule 12(b)(6), not whether Minden has satisfied the requirements of Article III, which is properly addressed in a motion under Rule 12(b)(1)."); *see also Fahmy v. Jay-Z*, No. 2:07-CV-05715-CAS-PJWx, 2016 WL 409644, at *2 (C.D. Cal. Feb. 1, 2016) ("Specifically in the context of the Copyright Act, courts have generally held that a finding that a plaintiff does not own a valid interest in a copyright is properly construed as a determination that a plaintiff lacks statutory, not constitutional, standing.").

Thus, the appropriate legal standard for the present motion is that which controls a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' " but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570).

3 – OPINION AND ORDER

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In addition to the allegations in the complaint, the court may consider documents that are attached to or incorporated by reference in the complaint, where the parties do not contest the authenticity of those documents, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## II. Timeliness of Defendant Biospintronics' Motion

Plaintiffs assert that Biospintronics' motion to dismiss is untimely because it did not file a motion in the time allowed to initially respond to plaintiffs' first amended complaint, and the motion should therefore be denied. Resp. Biospintronics Mot. Dismiss 4–5, ECF 45. Plaintiffs filed their first amended complaint on June 8, 2022, and Biospintronics did not file an answer or motion until November 3, 2022, which is outside the 21-day deadline to do so under Federal Rule of Civil Procedure 12(a)(1).

The untimeliness of Biospintronics motion can be attributed, in part, to the individual defendants' pro se status and the relationship between the individual defendants and Biosprintonics, their newly formed business entity. On May 9, 2022, defendant Bendebury filed a motion that purported to seek an extension of time for all defendants, including Biospintronics, to respond to plaintiffs' complaint. ECF 14. The extension was granted, but the order informed defendants that "[o]nly 'natural persons' may represent themselves" and that "[p]ro se parties may not represent business entities, even their own." ECF 15 (citing *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 203 (1993)). The order further noted that "Biospintronics must appear through counsel or a default judgment will be entered

4 – OPINION AND ORDER

against it." *Id.* After the individual defendants filed their motions to dismiss, they moved for another extension of time "to defer default judgment" against Biospintronics, asserting a different theory by which a decision regarding entry of default might be staved off. ECF 34, 35. The court then held a hearing on November 2, 2022, to discuss how to proceed with regards to Biospintronics. ECF 44.

At the hearing, the individual defendants explained that they had formed Biospintronics solely in response to plaintiffs' threats of litigation and the business entity was in essence just a shell so that the individual defendants could respond to plaintiffs' efforts to force a "take-down" of the individual defendants' YouTube videos without revealing their personal address. The entity apparently has no assets and has never engaged in any business activity. Plaintiffs represented that they intended to seek default against Biospintronics (though to date, plaintiffs have not made any motion to that end). The court reiterated to the individual defendants that the entity would need to secure counsel and make an appearance or risk entry of default. The next day, counsel for Biospintronics appeared and filed a motion to dismiss. ECF 36. In short, the individual defendants were diligently attempting to defend the claims against themselves and their business entity. They regularly communicated with opposing counsel and the court, and made several good-faith, though misguided, attempts to engage with the case on behalf of Biospintronics. When their initial attempts failed, and after clear direction from the court about the impossibility of representing the entity themselves, they immediately secured counsel for Biospintronics and the case moved ahead.

Plaintiffs argue that Biospintronics' delay in appearing and bringing the current motion to dismiss has prejudiced plaintiffs by requiring them to respond to Biospintronics' motion to dismiss. Resp. Biospintronics Mot. Dismiss 4–5, ECF 45. That argument is unavailing. Plaintiffs

5 – OPINION AND ORDER

failed to seek entry of default against Biospintronics during the approximately five months preceding Biospintronics' filing of the motion to dismiss; any prejudice to plaintiffs in responding to the motion is based, at least in part, on plaintiffs' own failure to act. Moreover, even if plaintiff had sought entry of default and default judgment, the resulting analysis would have been largely the same as the one employed below to analyze defendants' motions to dismiss. Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United. Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). If a plaintiff moves for entry of default judgment, the decision to enter such a judgment is a discretionary one guided by a number of factors, including the merits of the plaintiff's substantive claim. *Eitel v. McCool*, 782 F.2d 1471–72 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). There is no prejudice to plaintiffs here in having to respond to defendants' motions to dismiss; the facts as alleged are assumed to be true and the success of defendants' motion depends on the merits of plaintiffs' underlying claims. Whether it is in the context of a motion to dismiss or a motion for entry of default judgment, the legal sufficiency of plaintiffs' claims will be tested in the same way.

### III.    Discussion

#### A.    Copyright Infringement

The next question is the critical one: whether defendants' work—Demystifying Science ("DS")—has infringed on plaintiffs' registered copyright for the book Why God Doesn't Exist ("WGDE").

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by

the defendant." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)).

Plaintiffs' ownership of the copyright for the book "Why God Doesn't Exist" is not contested. *See* Mot. Dismiss 11, ECF 22; *see also* First Am. Compl. ¶ 18–20, ECF 19. Many of plaintiffs' infringement allegations do not, however, rely on the copyrighted text, but on various images or diagrams. *See* First Am. Compl. ¶¶ 57, 80, 81, ECF 19. Plaintiffs' complaint does not allege that these images and diagrams are part of the copyrighted work or otherwise explain their source, other than to claim they are "derivative" of the copyrighted work. *See id.* ¶ 20 ("The Rope Hypothesis and Rope Model theory originated in WGDE."). Plaintiffs also provide numerous links to YouTube videos and other materials, *e.g., id.* ¶¶ 78, but the complaint does allege that they hold a valid copyright for any of the images, diagrams, or videos. *Id.* ¶¶ 18–20, 57, 80, 81. Thus, any allegations based on claims for uncopyrighted works are dismissed, and only those allegations related to plaintiff's valid copyright in the text of "Why God Does Not Exist" are evaluated here.[2] *See Great Bowery, Inc. v. Cascade Digital Media LLC*, No. 6:20-CV-00009-MK, 2021 WL 3716654, at *2 (D. Or. July 15, 2021), *report and recommendation adopted,* 2022 WL 939871 (D. Or. Mar. 29, 2022) ("To have [statutory] standing to bring the infringement claim alleged in Plaintiff's Complaint, Plaintiff must prove that it is the legal or beneficial owner of an exclusive right under a copyright that Defendant allegedly violated.") (internal quotation marks and alteration omitted).

---

[2] Even if the complaint is broadly read to assert a claim of copyright over the images and diagrams, the analysis that follows would also require dismissal of those claims because the alleged infringing images are not copies of plaintiffs' images and are based on general ideas or theories, which copyright does not protect.

7 – OPINION AND ORDER

A plaintiff can prove copying in the absence of direct evidence by showing (1) that defendants had access to the copyrighted work and (2) there is substantial similarity between the copyrighted work and the alleged infringing work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020); *see also Erickson v. Blake*, 839 F. Supp. 2d 1132, 1135 (D. Or. 2012). The complaint adequately alleges that defendants had access to the copyrighted work and defendants do not contest the "access" element. First Am. Compl. ¶ 86, ECF 19; Mot. Dismiss 13–19, ECF 22.

"In the Ninth Circuit, the plaintiff establishes substantial similarity by demonstrating that the allegedly infringing work is both objectively similar (the 'extrinsic test') and subjectively similar (the 'intrinsic test') to the copyrighted work." *Erickson*, 839 F. Supp. 2d at 1135 (citing *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977). The intrinsic test is based on the ordinary person's subjective impressions of the compared works as a whole and is typically a question reserved for the jury. *Swirsky v. Carey,* 376 F.3d 841, 845 (9th Cir. 2004). The extrinsic test may, in certain cases, be decided by the court as a matter of law on a motion to dismiss. *Capcom Co. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *4–5 (N.D. Cal. Oct. 20, 2008) (collecting cases); *see also Erickson*, 839 F. Supp. 2d at 1135.

When applying the extrinsic test, the court's first task is to determine the scope of protection over the work because not every part of a work is copyrightable. *See Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1443 (9th Cir.1994); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. . . . [C]opyright protection may extend only to those components of a work that are original to the author."). "Unprotected elements of a

8 – OPINION AND ORDER

copyrighted work can include (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the underlying ideas; (3) standard or stock elements (*scènes à faire*); and (4) facts and other public information." *Erickson*, 839 F. Supp. 2d at 1136.

To show copyright infringement, plaintiffs provide the following comparison of passages from the copyrighted work and the alleged infringing works:

> WGDE: p. 13. ***object***: that which has shape

> DS: "**Object**… something with a shape (modified in April 2021 to read: "*An object is a thing with a surface…*")

> WGDE p. 15. ***distance***: the gap or separation that exists between two objects. ***location***: the set of distances of the object with respect to the remaining matter in the Universe.

> WGDE p. 460. ***exist***: physical presence. The physical component invokes an object. The presence part requires a location.

> DS: "in order for that object to exist it has to also have **location**: *a set of static distances* to all the other objects in the scene. Without a **location** an object cannot be said to **exist**" (Replaced on April 11 by: "*in order for that object to exist it has to also have physical place: a set of static distances to all the other objects in the scene.*") "reserve the word '**exist**' for physical objects with definite **locations**" "an **existing** object is a body with a **location**; that is something with a shape"

> WGDE: p. 15. ***motion***: two or more locations of an object.

> DS: Without two or more locations, no **travel** is possible in physics.

> WGDE: p. 13: In Physics… we must define the crucial word *object* in such a restrictive way as to exclude abstract **concepts**. All words in the dictionary are either objects or **concepts**.

> WGDE p. 16. ***concept***: A word that embodies or invokes more than one object or location.

> WGDE p. 15. A **concept** is a relation between TWO objects.

> DS: "All words, and hence all ideas… can be divided into one of two categories: object and **concept**." (DS changed this on April 11 to read: "*All words, and hence all ideas… can be divided into one of two categories: objects and ideas.*") A **concept**… is merely the relationship between one existing object and another or

9 – OPINION AND ORDER

an additional concept. (DS replaced the word *concept* in this sentence on April 11 with: "*Ideas abstractly link one existing object and another or an additional concept*")

First Am. Compl. ¶ 50 (as written).

Although there is some surface-level similarity between these passages, at their core, plaintiffs' claims seek to protect underlying ideas and not the specific *expression* of those ideas contained in the work—that is, the specific arrangement of words plaintiffs used to describe those ideas in the copyrighted work. The terms at issue include "object," "distance," exist," "location," "motion," and "travel." It is well-established that copyright does not protect "any idea, . . . concept, principle, or discovery, regardless of the form in which it is described, explained, [or] illustrated." 17 U.S.C. § 102(b). "Rather, copyright only affords protection to the expression of the idea—not the idea itself." *Barnett v. Ubimodo, Inc.*, No. 6:18-CV-418-MC, 2020 WL 945345, at *2 (D. Or. Feb. 26, 2020), *aff'd,* No. 20-35299, 2021 WL 5001710 (9th Cir. Oct. 28, 2021) (internal quotation marks omitted). Plaintiffs even lay claim to a "concept" and an "idea," the *sine qua non* of abstractions that copyright law does not protect. *See Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir. 1988) ("To the extent the similarities between plaintiff's and defendant's works are confined to ideas and general concepts, these similarities are noninfringing.").

"The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' " *Feist*, 499 U.S. at 349 (quoting U.S. Const., art. I, § 8, cl. 8). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id.* (citation omitted). That is precisely what plaintiffs have alleged here—that defendants have read, re-packaged, and re-described ideas first laid out in the copyrighted work. But there is no alleged copying of plaintiffs' specific expression of those ideas. *See id.* at 349 ("[N]o matter how much

original authorship the work displays, the facts and ideas it exposes are free for the taking. . . . [T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas.") (alterations in original) (quoting Jane C. Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 COLUM. L. REV. 1865, 1868 (1990)); *see also* Ginsburg, 90 COLUM. L. REV. at 1868 ("[T]he copyright may cover only the facts and ideas *as they are presented by the author.* . . . As a result of the "fact/expression or idea/expression dichotomy," the *scope* of copyright protection in an informational work may be quite scanty.") (emphasis in original). Because plaintiffs' copyright does not extend to the ideas and concepts described in the copyrighted book "Why God Doesn't Exist," plaintiffs' complaint does not state a claim for copyright infringement and defendants' motions to dismiss this claim is granted.

  **B.**  **Unfair Competition Under the Lanham Act**

  Defendants also seek dismissal of plaintiffs' Lanham Act claim for unfair competition. *E.g.*, Mot. Dismiss 22–23, ECF 22; *see also* First Am. Compl. ¶ 103 ("Defendants knowingly and willfully employed synonymous language to deceive readers, followers, and visitors of the various virtual and print forums into thinking that the mechanisms, connections, and entities originated with Defendants.") (citing 15 U.S.C. § 1125(a)(1)(A)).

  The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (alternation in original) (quoting 15 U.S.C. § 1127). But the Supreme Court has drawn careful lines between the protection offered by trademark and other intellectual property laws, including copyright. *Id.* at

34 ("[I]n construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright.") (internal quotation marks omitted).

Trademark is designed to assure consumers that a good has come from a particular source. *See id.* at 29 (explaining that the Lanham Act "created a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.' "). The statutory terms "origin" of "goods" refer to the "producer of the tangible product sold in the marketplace," and not "the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 31–32.[3] In other words, the Lanham Act does not "creat[e] a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution[.]" *Id.* at 36.

Plaintiffs' unfair competition claim embodies this limitation of the Lanham Act. According to plaintiffs, defendants have used plaintiffs' "copyrighted work by reproducing, distributing, creating derivative works based upon, and publicly displaying works that were copied" from plaintiffs' copyrighted work "without any attribution" to plaintiffs. First Am. Compl. ¶ 95; *see also id.* ¶ 103 ("Defendants knowingly and willfully employed synonymous language to deceive readers . . . into thinking that the mechanisms, connections, and entities"

---

[3] As an example, if Pepsi purchased a bottle of Coca Cola, replaced the packaging to suggest that the bottle had in fact come from Pepsi, and then re-sold it, that would violate the Lanham Act because it would deceive a consumer into thinking that Pepsi had produced the drink. If, by contrast, Pepsi takes Coca Cola's idea to bottle up a brown fizzy beverage, makes its own syrup and bubbles, and then labels it as coming from Pepsi, that is not prohibited by the Lanham Act, even though the two drinks share many fundamental characteristics. Consumers would know that Pepsi comes from Pepsi, and Coca Cola comes from Coca Cola, and can make an informed choice. *See Dastar*, 539 U.S. at 32–33 (explaining potential application of the Lanham Act to Pepsi-Cola).

12 – OPINION AND ORDER

originated from defendants). The right to copy or the prohibition against it, whatever the case may be, is controlled by copyright and patent law, not by trademark. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."). Plaintiffs' unfair competition claim based on unattributed use of plaintiffs' ideas thus fails as a matter of law and is dismissed.

### IV.     Leave to Amend

Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice requires." *Id.* The discretion whether to allow leave to amend is guided by the underlying purpose of Rule 15(a), which is "to facilitate decisions on merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). Thus, leave to amend is to be granted with "extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).

However, leave to amend is not automatically granted. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Leave may be denied "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Carvalho v. Equifax*

*Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (simplified). Prejudice is the most important factor. *Eminence Capital*, 316 F.3d at 1052. Futility may support denial of a motion to amend if it is clear that the pleading, as amended, is subject to dismissal and cannot be cured by amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citations omitted). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id*. (citation and internal quotation marks omitted).

Plaintiffs have not asked for leave to amend or stated how they would amend the complaint if allowed to do so, nor is it clear that they could cure the deficiencies outlined in this order. However, the law indicates plaintiffs should at least be afforded the opportunity to try. Therefore, if plaintiffs believe they can cure the defects outlined in this order, they may file a motion to amend within 30 days of the date of this order.

**ORDER**

Defendants' motions to dismiss (ECF 22, ECF 23, and ECF 36) are granted. Plaintiffs may seek leave to file an amended complaint by motion within 30 days from the date of this order. Pursuant to LR 7-1, the parties shall confer about such a motion before it is filed. A redlined copy of the proposed amended complaint must be attached to any motion to amend that is filed. If plaintiffs do not move to amend the complaint within 30 days from the date of this order, judgment shall be entered dismissing this case with prejudice.

DATED December 5, 2022.

/s/ Youlee Yim You  
Youlee Yim You  
United States Magistrate Judge