UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BILL GAEDE and NILA GAEDE,
husband and wife,

                    Plaintiffs,                                    Case No. 3:22-cv-00380-YY

        v.                                                         OPINION AND ORDER

MICHAEL DELAY; ANASTASIA BENDEBURY;
and BIOSPINTRONICS, LLC,

                    Defendants.

YOU, Magistrate Judge.

        Currently pending is defendant Biospintronics, LLC's Motion for Attorney Fees. ECF 58.

Because, among other things, plaintiffs' copyright infringement claims were at least

unreasonable, if not frivolous, based on the long-standing rule that ideas and theories are not

entitled to copyright protection, the motion is granted.

## I.    Background

        Plaintiff Bill Gaede filed this action in March of 2022, alleging that defendants

wrongfully copied ideas from his book, "Why God Doesn't Exist," and used those ideas on

defendants' website, YouTube videos, and podcasts. Compl. ¶¶ 8–12, ECF 1. The individual

defendants, Anastasia Bendebury and Michael DeLay, who wholly own and operate defendant

Biospintronics, immediately began searching for legal representation to respond to the lawsuit. Bendebury Decl. 1, ECF 59. Unsurprisingly, the estimates and requested retainers that defendants received to defend against the claims were prohibitively expensive. *Id.* Defendants reached out to the Electronic Frontier Foundation, who connected them with attorney Lake Perriguey, who agreed to "advise" defendants as they proceeded *pro se* in responding to the lawsuit. *Id.* at 2. Perriguey recruited another lawyer, Dave Madden, to assist. *Id.* The lawyers met with defendants several times and instructed them about "the inner workings of the legal system, case law, and the proper structure of a legal argument," and provided research materials. *Id.* The lawyers discovered that plaintiff Bill Gaede was not the actual owner of the asserted copyright, and thus advised the individual defendants to file a motion to dismiss. ECF 16, 17. Plaintiffs then filed an amended complaint that named the proper owner, Nila Gaede, as a co-plaintiff. ECF 19. The individual defendants again moved to dismiss. In doing so, they represented themselves in the pre-motion conferral with plaintiffs' counsel, and "did most of the work in researching the case law and in preparing all the motions." Mot. Fees 3, ECF 58; *see also* ECF 22, 23.

There remained, though, an issue as to the representation of defendant Biospintronics because the individual *pro se* defendants could not represent the business entity, and the court held a hearing on November 2, 2022, to discuss this issue with the parties. ECF 44. At the hearing, the court informed the individual defendants that defendant Biospintronics needed to secure counsel to defend against the lawsuit or it risked having a default judgment entered against it. The next day, Perriguey appeared on behalf of defendant Biospintronics and joined the individual defendants' motions to dismiss. ECF 36.

The court granted defendants' motions to dismiss primarily because plaintiffs' claims ran afoul of one of copyright law's most fundamental tenets: that copyright protection does not

extend to ideas or scientific theories. Opinion & Order (Dec. 6, 2022) 11, ECF 49; *see also id.* at 10 ("Plaintiffs even lay claim to a 'concept' and an 'idea,' the *sine qua non* of abstractions that copyright law does not protect.") (citing *Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir. 1988)). The court denied plaintiffs' subsequent motion for leave to file an amended complaint because the proposed amended complaint continued to improperly assert copyright over plaintiff Bill Gaede's scientific theories about the physical world. Opinion & Order (Mar. 1, 2023) 6–10, ECF 56.

This motion for attorney fees followed. ECF 58. Perriguey seeks $15,080 in fees for the work he did on behalf of defendant Biospintronics and for the advice he gave to the individual defendants.[1]

## II.    Whether to Award Fees

Generally, a party to litigation has no right to recover attorney fees unless there is a statute or contract that confers such a right. *Powell v. Rasmussen*, No. 2:19-CV-1077-JR, 2022 WL 2292023, at *1 (D. Or. June 24, 2022) (citing *Lumbermen's v. Dakota Ventures*, 157 Or. App. 370, 374 (1998)). The Copyright Act empowers the court to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The court has "wide latitude to award attorney's fees based on the totality of circumstances in a case," and while there is no set formula for determining whether to grant fees, the court's discretion is guided by several principles. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202–03 (2016). Fees are not awarded as a matter of course; instead the "court must make a more particularized, case-by-case assessment." *Id.* at 202. Prevailing plaintiffs and prevailing defendants must be treated equally.

---

[1] Sadly, Dave Madden passed away during the course of this litigation. Mot. Fees 9, ECF 58. Defendants do not seek any fees for his work. *Id.*

*Id.* And the Supreme Court has "noted with approval several nonexclusive factors to inform a court's fee-shifting decisions: frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (simplified) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The "reasonableness of the losing party's legal and factual arguments" is given substantial, but not controlling weight. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018); *Kirtsaeng*, 579 U.S. at 208–09. The Ninth Circuit has "added factors that may be considered and need not all be met: the degree of success obtained in the litigation, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious litigant." *Glacier Films*, 896 F.3d at 1037 (simplified) (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)).

The application of these factors and the circumstances of this case support an award of fees here. First, plaintiffs' claims were at least objectively unreasonable, if not frivolous. *See SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (affirming attorney fee award against party who "should have known from the outset that its chances of success . . . were slim to none"); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (explaining that a complaint "is frivolous where it lacks an arguable basis either in law or in fact"). It is axiomatic that copyright protection extends only to the particular expression of the idea and not to the idea itself. *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987) (citing *Mazer v. Stein*, 347 U.S. 201, 217-18 (1954); *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985) ("[N]o author may copyright facts or ideas."); *Reilly v. Wozniak*, No. 2:18-cv-03775-MTL, 2021 WL 5396092, at *4 (D. Ariz. Nov. 18, 2021), *aff'd*, No. 21-16140, 2023 WL 142545 (9th Cir. Jan. 10, 2023) ("It is Hornbook law that ideas are not

copyrightable subject matter."). The statutory text of the Copyright Act itself states that an "idea" or "discovery" is not copyrightable. 17 U.S.C. § 102(b).

Plaintiffs' claims in this suit clearly ran afoul of this fundamental principle, and are a near perfect example of the policies and authorities animating the rule. For example, plaintiffs alleged that "[f]or the purposes of physical interpretations, physics requires the definitions of words such as: object, distance, location, motion, exist, and concept," and "no one in mainstream physics ever identified these specific words individually or as a set, and . . . no one defines them as in WGDE." Proposed Am. Compl. ¶¶ 58, 66, ECF 50-1. According to plaintiffs, defendants "copied and repackaged all of Plaintiffs' main work regarding the structures and mechanisms underlying light, the atom, electricity, magnetism, mass and gravity" in part because defendants "had no choice but to copy Plaintiffs' definition of the key word object . . . and strategic word concept," and "could not easily elude synonyms such as interconnection, connected, bind, bound, [or] coupled[.]" *Id.* ¶¶ 78–80, 89–90. It is precisely this problem—that defendants could not avoid using "strategic terms" or "synonyms" when discussing plaintiffs' theories about the physical world—that is at the root of the "idea/expression dichotomy" in copyright law.

The policies of the Copyright Act, and constitutional command that Congress use copyright law to "promote the progress of science," U.S. Cons. Art. I, § 8, cl. 8, would be frustrated if plaintiff Bill Gaede "is the only theorist on the planet" who is allowed to discuss his theories. Proposed Am. Compl. ¶ 86, ECF 50-1; *Kirtsaeng*, 579 U.S. at 204 (explaining that the Copyright Act "strik[es] a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work"). And awarding fees to defendants here would further the goals of the Copyright Act because it would reinforce this bedrock principle that ideas are not copyrightable, and it would deter similarly unreasonable

claims. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 668 (9th Cir. 2018) (affirming district court's award of fees in part because the "purpose of general deterrence would be served by awarding fees against a party who had litigated an objectively unreasonable claim, or who had brought a claim in bad faith").

Finally, defendants achieved complete success on the merits because plaintiffs' claims were fully dismissed with prejudice. ECF 49, 56; *see also City of Inglewood v. Teixeira*, No. 2:15-cv-01815-MWF-MRW, 2015 WL 6146269, at *2 (C.D. Cal. Oct. 8, 2015) ("Defendant achieved a complete victory on the merits in dismissing the . . . action with prejudice.").

## III.    Amount of Fees

Having determined that an award of fees is appropriate here, the next question is whether the requested amount of fees is reasonable. "The customary method of determining fees . . . is known as the lodestar method." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g,* 108 F.3d 981 (9th Cir. 1997); *see also Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The court excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"[T]here is a strong presumption that the lodestar is sufficient." *Perdue*, 559 U.S. at 556. The court may "assess whether the presumptively reasonable lodestar figure should be adjusted on the basis of *Kerr* factors not already subsumed in the initial calculation." *McGrath*, 67 F.3d 248 at 252. The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions involved; (3) the skill requisite to perform the legal
> service properly; (4) the preclusion of other employment by the
> attorney due to acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) any time limitations
> imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the undesirability of the case; (11)
> the nature and length of the professional relationship with the
> client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds*,

*City of Burlington v. Dague*, 505 U.S. 557 (1992).

### A.    Reasonableness of Requested Hours

Defendant Biospintronics, as the party seeking fees, bears "the burden of documenting

the appropriate hours expended in the litigation, and [is] required to submit evidence in support

of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emps.*

*Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted). In support of the motion

for fees, Perriguey submitted detailed billing records showing that he worked 30.2 hours total on

the matter. Perriguey Decl. Ex. 1, ECF 61. The billing records show that Perriguey spent

reasonable amounts of time performing services such as meeting with the individual defendants,

reviewing and researching legal issues, editing motions and other documents, and

communicating with opposing counsel. Perriguey Decl. Ex. 1, ECF 61. The entries are not

duplicative and the time spent is not excessive. *See id.*

Plaintiffs argue that the amount of fees here is unreasonable because Perriguey's

involvement in the case on behalf of Biospintronics was limited. Resp. 5, ECF 63. They assert

that Perriguey did not make an appearance in the case until November 3, 2022, when he filed a

motion to dismiss on behalf of defendant Biospintronics. *Id.* at 4–5; *see also* ECF 36. And when

he did appear, plaintiffs argue, the work he provided on behalf of defendant Biospintronics was

not extensive. He filed a corporate disclosure statement, a consent to magistrate judge jurisdiction, and the motions for defendant Biospintronics were very short in that they simply joined the motions filed by the *pro se* individual defendants; the longest brief Perriguey submitted for defendant Biospintronics was the currently pending motion for fees. Resp. 5, ECF 63.

But Perriguey provided ongoing advice and counsel for *all* of the defendants—including the LLC and the individual defendants, who are the only members of the LLC. *See* Bendebury Decl. 2-3, ECF 59 (describing Perriguey's efforts in advising "*Defendants*") (emphasis added). In fact, the individual defendants formed Biospintronics solely because of plaintiffs' threats of litigation; the business entity was in essence just a shell so that the individual defendants could respond to plaintiffs' efforts to force a "take-down" of the individual defendants' YouTube videos without revealing their personal address. The entity apparently has no assets and has never engaged in any business activity. Opinion & Order 5, ECF 49. Notably, the claims alleged against defendants—both the individual defendants and the LLC—are substantially the same. *See* First Amended Compl., ECF 19. Thus, in advising the individual defendants, Perriguey simultaneously advised the LLC.

Moreover, Perriguey's assistance to defendants was valuable to the disposition of the case and to the efficient use of judicial resources—the motions submitted by the individual defendants, which were joined by the LLC, were well researched, coherently organized, and skillfully written. The fact that Perriguey negotiated an arrangement whereby he would provide less than the full panoply of services that litigation counsel might provide in a typical case does

not mean that his requested fees are unreasonable.[2] *See Manhart v. City of Los Angeles, Dep't of Water & Power*, 652 F.2d 904, 909 (9th Cir. 1981), *vacated on other grounds,* 461 U.S. 951 (1983) ("The statute authorizes payment of a reasonable fee, not the fee agreed upon by the parties and their attorney. The fee agreed upon is therefore not decisive."); *Nat'l Laws. Guild v. Att'y Gen.*, 94 F.R.D. 616, 618 (S.D.N.Y. 1982) ("Generally, courts have concluded that the amount of a reasonable attorneys' fee award . . . should be determined without reference to any private agreement between client and counsel.").

Plaintiffs' assertion that there is some "fundamental unfairness issue with assessing fees" against plaintiffs for fees incurred while the individual defendants were representing themselves is puzzling. Resp. 6, ECF 63. For one, it is the LLC that is seeking fees here, not the individual defendants. Moreover, the imposition of fees against plaintiffs is based in large part, though not exclusively, on the frivolousness of plaintiffs' claims in the face of long-established principles of copyright law, and not in any sense on defendants' strategic decision about how to divide the work required to respond to plaintiffs' lawsuit. *See Glacier Films*, 896 F.3d at 1037 (emphasizing that in deciding whether to attorney fee awards under the Copyright Act, district courts should "accord substantial weight to the reasonableness of the losing party's legal and factual arguments.") (simplified). The implied suggestion that plaintiffs may have approached the case differently had they known the individual defendants were consulting with an attorney is not only wholly irrelevant to analyzing the reasonableness of plaintiffs' claims, but it also gives rise to an inference that plaintiffs had an improper purpose in pursuing specious claims against unrepresented parties in an effort to coerce settlement. *See AF Holdings LLC v. Navasca*, No. C-

---

[2] Perriguey makes clear that any work performed by the individual defendants is "not charged." Perriguey Decl. 2, ECF 61.

12-2396 EMC, 2013 WL 3815677, at *2 (N.D. Cal. July 22, 2013) (finding that inadequate investigation of copyright claims before bringing suit and subsequent litigation conduct suggesting improper motive to coerce settlement supported award of fees).

### B.    Reasonableness of Requested Rate

In determining the "reasonable hourly rate," the court looks to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (simplified). The relevant community "is one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). This court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billable rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); *Copeland-Turner v. Wells Fargo Bank, N.A.*, No. 11-cv-37-HZ, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012). The Economic Survey sets forth rates charged by Oregon attorneys in the relevant year, including rates specific to communities such as the Portland area.

Perriguey has been a licensed attorney since 1998 and has handled numerous cases before this court, including as court-appointed *pro bono* counsel in other copyright cases. Perriguey Decl. 2, ECF 61. His requested $500 hourly rate falls within the range for Portland-area attorneys with his years of experience and similar areas of practice, such as civil litigation defense, as reflected in the 2022 Economic Survey. Oregon State Bar, 2022 Economic Survey 43 tbl. 36, 44 tbl. 37 (2023).[3]

Plaintiffs argue that attorney fees are not warranted here because defense counsel worked *pro bono*, and thus the defendants did not actually pay any legal fees. Resp. 5, ECF 63. It is well-

---

[3] https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf

established, however, that "[a]ttorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Voice v. Stormans Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014) (citing *See Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989) ("[W]here there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee."); *see also Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) (awarding fees to pro bono counsel); *Radin v. Hunt*, No. 2:10-cv-08838-JAK-SS, 2012 WL 13006187, at *4 (C.D. Cal. Feb. 27, 2012) (holding that nothing in Section 505 precludes a prevailing party from receiving reasonable attorney's fees, "even though they were indemnified") *aff'd*, 499 F. App'x 684 (9th Cir. 2012). That Perriguey's services were provided *pro bono* has little, if any, impact on the analysis here. *See Teixeira*, 2015 WL 6146269 at *2 (explaining that counsel's pro bono status "is of little import to the propriety of the attorneys' fees award" under the Copyright Act).

## ORDER

For all the reason stated, defendant Biospintronics' Motion for Attorney Fees (ECF 58) is granted, and defendant Biospintronics is awarded $15,080 in attorney fees.

DATED May 31, 2023.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge